UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
THE REPUBLIC OF ECUADOR and :
PETROECUADOR, : **OPINION**
: 04 Civ. 8378 (LBS)
        Plaintiffs, Counterclaim Defendants, :
:
- against - :
:
CHEVRONTEXACO CORPORATION :
and TEXACO PETROLEUM COMPANY :
:
        Defendants, Counterclaim Plaintiffs. :
-----------------------------------------------------------------x

Appearances:

*Plaintiffs, Counterclaim Defendants*

C. MacNeil Mitchell
Raul R. Herrerra
Paolo Di Rosa
Winston & Strawn LLP
Washington, D.C. 20006


*Defendants, Counterclaim Plaintiffs*

Louis K. Fisher
Thomas F. Cullen, Jr.
Gregory A. Castanias
Michael Kolis
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113

SAND, J.

Before the Court is a motion by Plaintiffs Republic of Ecuador and Petroecuador (collectively "Ecuador") to dismiss the counterclaim by Defendants ChevronTexaco and Texaco Petroleum Company (collectively "TexPet") for failing to state a claim. This counterclaim asserts that an action brought by private plaintiffs in Ecuador ("the Lago Agrio action") is barred under the terms of contractual releases from 1995 and 1998, and that the Lago Agrio action was premised on a subsequent 1999 Ecuadorian law which "in effect allows the plaintiffs in the Lago Agrio litigation to assert, as private attorneys general, claims that belonged to Ecuador but were released by the 1995 Settlement and 1998 Final Release." Republic of Ecuador v. ChevronTexaco Corp., 376 F. Supp. 2d 334, 342 (S.D.N.Y. 2005).

While the 2005 decision by the Court disposed of nearly all the motions by the parties, the Court deferred action on Ecuador's motion to dismiss this counterclaim, noting that the issue deserved additional briefing on the question of whether a conflict existed between the laws of New York (the forum state) and Ecuador. The Court stated that in the United States "it is an accepted rule of law" that certain state contracts can bar similar actions by members of the public. Id. at 376. It cited the case of Satsky v. Paramount Communications, 7 F.3d 1464 (10th Cir. 1993), and noted the position that "[w]hen a state litigates common public rights, the citizens of that state are represented in such litigation by the state and are bound by the judgment." Id. at 1470. The Court also noted that the Second Circuit cited Satsky approvingly in New York by Vacco v. Reebok International, 96 F.3d 44, 48 (2d Cir. 1996). Finally, the Court stated:

> The question is whether something like the Satsky rule applies here, where the settlement is not alleged to have been entered as a consent decree, the relief sought is against the sovereign rather than the individuals alleged to be asserting public rights, and American substantive law may not govern in any event because the 1995 Settlement and 1998 Final Release had little connection with the United States.

Republic of Ecuador, 376 F. Supp. 2d at 377.

The Court went on to note that in order to "ascertain whether there is an actual conflict of laws with respect to the counterclaims at issue here, it is necessary to know what the law of Ecuador is: because Ecuador was the place of execution and performance of the contracts at issue, as well as the place of business of at least some of the parties, it is a logical candidate for the source of governing substantive law." Id. Pursuant to Rule 44.1 of the Federal Rules of Civil Procedure, the Court directed that supplemental submissions on the conflict-of-law issue be

presented. See Fed. R. Civ. P. 44.1 ("The court, in determining foreign law, may consider any relevant material or source . . . .").

DISCUSSION

In the spring of 2005, Ecuador moved for summary judgment on its own claims and moved to dismiss TexPet's counterclaims. Ecuador claimed that the counterclaims ought to be dismissed under Rule 12(b) for lack of subject matter jurisdiction and failure to state a claim. The Court found that some of the counterclaims lacked subject matter jurisdiction, while others did not. The ones that did not were the counterclaims based on the 1995 Settlement and 1998 Final Release.

When the Court addressed those claims in the 2005 decision, it noted the parties' positions with respect to the counterclaims based on the 1995 and 1998 agreements. TexPet argued that claims by the Lago Agrio plaintiffs (with respect to generalized claims of remediation) were precisely the claims Ecuador bargained away, and that Ecuador was trying to have it both ways by enacting the 1999 law. Ecuador argued that the 1995 and 1998 agreements only involved the rights of the Republic of Ecuador and Petroecuador; they did not involve the rights of third parties.

The standard on a 12(b)(6) motion strongly favors the non-movant (TexPet). "Dismissal is proper if, accepting all the allegations in the complaint as true and drawing all reasonable inferences in [the non-movant's] favor, the complaint fails to allege any set of facts that would entitle [the non-movant] to relief." Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc., 343 F.3d 189, 194 (2d Cir. 2003). TexPet's counterclaim is a breach of contract claim. Thus, the conflict-of-law dispute is really a dispute about whether as a matter of contract interpretation TexPet's counterclaim states a claim. Ecuador must show that there are no facts which would entitle TexPet to relief. To do so, it must make an argument about the viability of the claim under the governing law. The question that arose in the 2005 decision was whether Ecuadorian law was the appropriate substantive law to be applied in the case or simply the background of the drafting of the contract.

The conflict-of-law analysis begins with the recognition that this contractual dispute is part of a Foreign Sovereign Immunities Act ("FSIA") case. See Republic of Ecuador, 376 F. Supp. 2d at 367 ("[T]he FSIA governs the presence or absence of subject-matter jurisdiction here."). Forum law provides the choice of law rules for FSIA cases, Barkanic v. Gen. Admin. of Civil Aviation of People's Republic of China, 923 F.2d 957, 959-60 (2d Cir. 1991), and in New York "the first question to resolve in determining whether to undertake a choice of law analysis is

whether there is an actual conflict of laws." Curley v. AMR Corp., 153 F.3d 5, 12 (2d Cir. 1998). If there is a conflict, the next question is whether the law of Ecuador or the law of New York should apply. Feiger v. Pitney Bowes Credit Corp., 251 F.3d 386, 394 (2d Cir. 2001). When dealing with a contracts case, courts determine which law should apply by "evaluat[ing] the 'center of gravity' or 'grouping of contacts', with the purpose of establishing which state has 'the most significant relationship to the transaction and the parties.'" Id. (citations omitted).

The parties disagree on every point of the choice of law issue except the question of which choice-of-law rules should apply in deciding the issue (they agree New York's rules apply). They disagree as to whether there is a conflict between New York law and Ecuadorian law (TexPet: No; Ecuador: Yes). They disagree as to whether the counterclaim is permissible under New York law (TexPet: Yes; Ecuador: No). And they disagree as to whether the counterclaim is permissible under Ecuadorian law (TexPet: Yes; Ecuador: No).

THE ALLEGED CONFLICT

Ecuador points to "principles of Ecuadorian constitutional, contract, and administrative law" as the bases for finding a conflict between New York and Ecuadorian law. (Ecuador Br. 7.) Ecuador claims that New York law would treat the "Republic as a private contracting party" whereas under Ecuadorian law "the status of the government as a party to the Agreements, its constitutional prerogatives and limitations, and inalienable rights conferred on individual citizens by Ecuador's constitution would factor into the analysis." (Ecuador Br. 8.) Ecuador makes three sub-points as part of this general argument. "First, under Ecuador law, the government's contracts are not necessarily executed on behalf of citizens." (Ecuador Br. 7.) Second, "the Republic's execution of the Agreements could not bar claims by third parties for environmental remediation insofar as by doing so it would have preempted the exercise by the citizenry of certain rights expressly contemplated in the Ecuadorian Constitution." (Ecuador Br. 7.) Third, "a private contract of this nature entered into by the Republic [could not] prevent its future exercise of sovereign powers, such as the enactment of legislation." (Ecuador Br. 8.)

It is not apparent from Ecuador's briefs that any of these contentions raise a conflict between New York and Ecuadorian law. With respect to its first claim, Ecuador claims that the act of a state entering into a contract with a private party does not qualify as a sovereign act under Ecuadorian law. Its support for this contention is a legal opinion provided by two Ecuadorian law professors, Oyarte and Paredes. In their joint affidavit, they cite an unrelated resolution by the Constitutional Court of Ecuador for the proposition that "the 1995 Contract cannot be classified as an 'act of government,' because the unilateral will of the State is not expressed therein."

4

(Oyarte/Paredes Aff. iv). The conclusory statement by the two professors is not grounded in any analysis of Ecuadorian law and there is no indication that Ecuadorian law and New York law would in fact differ as a result of this resolution by the Constitutional Court.

Second, Ecuador claims that the contract cannot be interpreted to extinguish rights protected by Ecuador's Constitution. But there appears to be no conflict with regard to New York law on this point either; the state of New York could not enter into contracts which extinguish rights held by citizens under the New York Constitution. Ecuador in fact does not attempt to show that a conflict would result on this point, it simply makes an assertion.

Third, Ecuador claims that a "private contract entered into by the Republic could not bar later legislation by the government." (Ecuador Br. 8.) Again, that may well be true, but TexPet does not claim that Ecuador is forbidden from legislating; TexPet simply argues that if Ecuador bestowed upon the citizenry the very rights the state had bargained away, Ecuador must cover the costs of any judgment won by the Lago Agrio plaintiffs on any remediation claim. Ecuador makes no argument as to why New York law would differ from Ecuadorian law on this point.[1]

In short, Ecuador has not met its burden of showing that a conflict exists with respect to how the contract at issue would be interpreted under New York law and Ecuadorian law. As the Court stated in its 2005 decision, Ecuadorian law was "a logical candidate for the source of governing substantive law," Republic of Ecuador v. ChevronTexaco Corp., 376 F. Supp. 2d 334, 377 (S.D.N.Y. 2005), and out of an abundance of caution the Court requested additional briefing. However Ecuador has failed to show that a conflict exists between Ecuadorian law and New York law with respect to the interpretation of the contracts. As we have noted, the counterclaim is a claim of breach of contract. Ecuadorian law is the background against which that contractual intent was formed, but no conflict has been shown between Ecuadorian law and New York law.

---

[1] Ecuador also presses a more general point that "the principles of New York contract law relevant to the instant dispute *cannot* properly include the federal constitutional doctrines invoked by Defendants because they are only applicable to the U.S. Government." (Ecuador Br. 5.) Ecuador thus claims that a comparison of Ecuador law and New York law must exclude any consideration of federal constitutional doctrines, such as those mentioned in Satsky v. Paramount Communications, 7 F.3d 1464 (10th Cir. 1993). While this is an interesting contention, it is essentially an unsupported one, as Ecuador's sole citation is weak and misleading. It cites Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 424-26 (1964), for the proposition that the case "explain[s] that some constitutional doctrines are part of federal law, not state law." (Ecuador Br. 5.) But the cited pages involve the Court's discussion of "the foundations on which we deem the act of state doctrine to rest, and more particularly the question of whether state or federal law governs its application in a federal diversity case." Id. at 421. This does not support the contention that New York law will not adequately respect the rights of Ecuador. See also U.S. Const. art. VI cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby . . . .").

The Court thus turns to whether under New York law TexPet's counterclaim ought to be dismissed for failure to state a claim.

THE COUNTERCLAIM

TexPet's counterclaim is grounded in the doctrine of parens patriae and the notion that "at least some of the claims brought in the Lago Agrio action effectively *are* claims by Ecuador, prosecuted on Ecuador's behalf by individual plaintiffs acting as private attorneys general under a 1999 law, and that such claims were intended to be included in the 1995 Settlement and 1998 Final Release." Id. at 376. TexPet's argument at bottom is that the ability to sue third parties on theories premised on state sovereignty and rights to general remediation (and not on theories of specific injuries to individual citizens) can only be held by the state itself. Under the logic of the counterclaim, if there was a transfer of the state's right to sue to individual citizens, such a transfer violated the 1995 and 1998 agreements.

The Supreme Court has sketched the scope of the parens patriae doctrine as follows:

> [T]he case law involving *parens patriae* actions leads to the following conclusions. In order to maintain such an action, the State must articulate an interest apart from the interests of particular private parties, *i. e*., the State must be more than a nominal party. The State must express a quasi-sovereign interest. Although the articulation of such interests is a matter for case-by-case development -- neither an exhaustive formal definition nor a definitive list of qualifying interests can be presented in the abstract -- certain characteristics of such interests are so far evident. These characteristics fall into two general categories. First, a State has a quasi-sovereign interest in the health and well-being -- both physical and economic -- of its residents in general. Second, a State has a quasi-sovereign interest in not being discriminatorily denied its rightful status within the federal system.

Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel Barez, 458 U.S. 592, 607 (1982).

The Second Circuit echoed this approach in Badgley v. City of New York, 606 F.2d 358 (2d Cir. 1979), where it stated that a state may not "sue to recover damages on behalf of its individual citizens." Id. at 365 (citing North Dakota v. Minnesota, 263 U.S. 365, 375-76 (1923)). Instead, "a suit may be brought by a state 'for an injury to it in its capacity of *quasi*-sovereign. In that capacity the State has an interest independent of and behind the titles of its citizens, in all the earth and air within its domain.'" Id. (quoting Georgia v. Tenn. Copper Co., 206 U.S. 230, 237 (1907))). That principle appears directly on point in this case, where TexPet alleges that Ecuadorian citizens lacked the right under Ecuadorian law to sue third parties for remediation, and that Ecuador violated the terms of the contract if it bestowed that right of action upon the

6

citizenry in 1999 legislation. Ecuador claims that individual Ecuadorian citizens possessed the right pre-1999 to sue third parties for general remediation. As noted above, New York law raises the possibility that because the right to sue for general remediation is a claim of an injury to the sovereign, only the state could possess it. Certainly in light of this these precedents TexPet has stated a counterclaim which may succeed under the governing law. Dismissal on 12(b)(6) grounds is therefore inappropriate because TexPet has alleged facts which, if true, would entitle it to relief.

CONCLUSION

As no conflict between Ecuadorian law and the law of the forum has been shown, the Court will apply New York law in evaluating TexPet's counterclaim, recognizing that any assessment of the intent of the parties in agreeing to the 1995 and 1998 releases must take into consideration the Ecuadorian law at the time of the releases and the Ecuadorian context in which the parties were acting. With regard to Ecuador's motion to dismiss this counterclaim pursuant to Rule 12(b)(6), under the governing law TexPet has set forth facts which if true would entitle it to relief, rendering dismissal unwarranted. The motion to dismiss the counterclaim is denied.

SO ORDERED

Dated: April 5, 2006
New York, NY

_____
U.S.D.J.